IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

LISA Y. HENDERSON,
Acting Regional Director
of the Tenth Region of the
NATIONAL LABOR RELATIONS
BOARD, for and on behalf of
the NATIONAL LABOR RELATIONS
BOARD,

    Petitioner,


v.                      CIVIL ACTION NO. 1:16-cv-06305


BLUEFIELD HOSPITAL COMPANY, LLC d/b/a
BLUEFIELD REGIONAL MEDICAL CENTER

....................................................................................................................

LISA Y. HENDERSON,
Acting Regional Director
of the Tenth Region of the
NATIONAL LABOR RELATIONS
BOARD, for and on behalf of
the NATIONAL LABOR RELATIONS
BOARD,

    Petitioner,

v.                      CIVIL ACTION NO. 5:16-cv-06307

GREENBRIER VMC, LLC d/b/a
GREENBRIER VALLEY MEDICAL CENTER,

    Respondent.


**MEMORANDUM OPINION AND ORDER**

      Pending before the court is the Petition for Injunctive Relief

filed by Lisa Y. Henderson ("Henderson"), the Acting Regional

Director of Region 10, Subregion 11, of the National Labor

Relations Board ("NLRB"). (1:16-cv-06305, Doc. No. 1). Also pending before the court is a second Petition for Injunctive Relief filed by Lisa Y. Henderson ("Henderson"), the Acting Regional Director of Region 10, Subregion 11, of the National Labor Relations Board ("NLRB"). (5:16-cv-06307, Doc. No. 1).

Defendants Bluefield Hospital Company, LLC ("Bluefield Hospital" or "Bluefield") and Greenbrier Valley Medical Center, LLC ("Greenbrier VMC" or "Greenbrier"), respectively, have opposed the Petitions. (1:16-cv-06305, Doc. No. 13; 5:16-cv-06307, Doc. No. 14).[1] Petitioner has filed responses. (1:16-cv-06305, Doc. No. 14; 5:16-cv-06307, Doc. No. 15). A hearing was held on September 13, 2016 at the federal courthouse in Charleston, West Virginia, to consider the merits of the two Petitions in tandem. (1:16-cv-06305, Doc. No. 15; 5:16-cv-06307, Doc. No. 16). The court finds the matter ripe for adjudication.

The pressure point of these cases is the NLRB's contention that the defendants have committed unfair labor practices under Section 8(a)(1) and (5) of the National Labor Relations Act (NLRA), as amended by the Labor Management Relations Act (LMRA) of 1947, 29 U.S.C. § 160(j), and as affecting commerce within the meaning of Section 2(6) and 2(7) of the NLRA. The interim

---

[1] Both Bluefield Hospital and Greenbrier VMC are alleged to be owned by the parent company Community Health Services, Inc. ("CHSI").

injunctive relief which the NLRB seeks from this court in order to hold in abeyance the status quo ordinarily is referred to as "§ 10(j) relief." Whether the defendants have committed unfair labor practices under the NLRA is not the dispute before this court today. The question solely is whether the preliminary injunction ought to issue. In discharging its obligation, this court is mindful that "§ 10(j) relief is extraordinary and such relief should be narrowly tailored." Muffley ex rel. N.L.R.B. v. Spartan Mining Co., 570 F.3d 534, 545 (4th Cir. 2009). This is particularly true since "§ 10(j) only authorizes interim injunctive relief 'reasonably necessary to preserve the ultimate remedial power of the Board and is not to be a substitute for the exercise of that power.'" Id. (quoting Schaub v. Detroit Newspaper Agency, 154 F.3d 276, 279 (6th Cir. 1998)).

Adhering to the United States Supreme Court's guidance, this court requires that movants "seeking preliminary relief [must] demonstrate that irreparable injury is likely in the absence of an injunction." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) (emphasis in original). Since the Acting Regional Director has not satisfied the requisite "irreparable injury" prong of the preliminary-injunction inquiry, this court DENIES her Petition without prejudice.

## I.  FACTUAL BACKGROUND

On January 20, 2016, the National Nurses Organizing Committee (NNOC), AFL-CIO ("Union"), filed a charge with the NLRB accusing the defendants of unfair labor practices in contravention of the salient NLRA provisions.  After the charges were filed, the General Counsel, on the NLRB's behalf and pursuant to Section 10(b) of the Act, issued an Order Consolidating Cases, Consolidated Complaint and Notice of Hearing in Cases 10-CA-168085, involving defendant Bluefield Hospital, and 10-CA-167330, involving Greenbrier VMC, LLC d/b/a Greenbrier Valley Medical Center.

Both defendants meet the statutory-floor requirements to be subject to a § 10(j) injunction analysis.  Petitioner makes various allegations against both defendants.  The background with respect to each defendant is now discussed in turn.

### A. Bluefield Hospital

Bluefield Hospital, a Delaware limited liability company with an office and place of business in Bluefield, West Virginia, has been engaged in the operation of an acute-care hospital providing inpatient and outpatient care.

The following group constitutes a "unit" for the purposes of collective bargaining within the meaning of Section 9(b) of the NLRA:

> All full-time, regular part-time, and per
> diem Registered Nurses, including those who
> served as relief charge nurses, employed by
> Respondent Bluefield at its 500 Cherry
> Street, Bluefield, West Virginia hospital;
> excluding all other employees, including
> managers, confidential employees,
> physicians, technical employees, service and
> maintenance employees, employees of outside
> registries and other agencies supplying
> labor to Respondent Bluefield, guards and
> supervisors as defined in the Act.

(1:16-cv-06305, Doc. No. 1).  On August 29, 2012, a

representation election among the Bluefield Hospital Unit was

held pursuant to a consent election agreement.  On September 25,

2012, the NLRB certified the Union as the exclusive collective-

bargaining representative of the Bluefield Hospital Unit.

On May 6, 2016, the United States Court of Appeals for the

Fourth Circuit, in NLRB v. Bluefield Regional Medical Center,

821 F.3d 534, 547 (4th Cir. 2016), held that Respondent

Bluefield Hospital's challenge to the Board's September 2012

certification of the Union was unmeritorious.  The Fourth

Circuit enforced a Board Order requiring Bluefield Hospital to

bargain with the Union.  821 F.3d at 540.

During the period between March 6, 2015 through November 8,

2015, Bluefield Hospital and the Union met for the purpose of

negotiating an initial collective-bargaining agreement with

respect to wages, hours, and other terms and conditions of

employment.  Petitioner alleges that, during this time,

Bluefield Hospital "bargained with no intention of reaching an agreement, insisted upon proposals that were predictably unacceptable to the Union, made proposals aimed at depriving the Union of its representational role, and displayed a repeated unwillingness to adjust differences with the Union." (1:16-cv-06305, Doc. No. 1).  Petitioner, accordingly, contends that Bluefield Hospital "has failed and refused to bargain in good faith with the Union as the exclusive collective-bargaining representative of the Unit."  Id.

Petitioner seeks a preliminary injunction against Bluefield Hospital since, in Petitioner's view, absent the immediate availability of injunctive relief, "it may fairly be anticipated that Respondent Bluefield will continue its unlawful conduct during the proceedings before the Board, with the result that Respondent Bluefield's employees will continue to be deprived of their fundamental right to be represented for the purposes of collective bargaining as provided for in the Act, creating a disruptive effect on commerce, all to the detriment of the Act and public interest." (1:16-cv-06305, Doc. No. 1).

Petitioner moved for a preliminary injunction before this court on July 13, 2016.  (1:16-cv-06305, Doc. No. 1).

## B. Greenbrier VMC

Greenbrier is a Delaware limited liability company with an office and place of business in Ronceverte, West Virginia. Greenbrier has been engaged in the operation of an acute-care hospital providing inpatient and outpatient care.

The following group constitutes a "unit" for the purposes of collective bargaining within the meaning of Section 9(b) of the NLRA:

> All full-time, regular part-time, and per diem Registered Nurses, including those who served as relief charge nurses, employed by Respondent Greenbrier at its 202 Maplewood Avenue, Ronceverte, West Virginia hospital; excluding all other employees, including managers, confidential employees, physicians, technical employees, service and maintenance employees, employees of outside registries and other agencies supplying labor to Respondent Greenbrier, guards and supervisors as defined in the Act.

(5:16-cv-06307, Doc. No. 1). The Union is a labor organization under Section 2(5) of the NLRA. Moreover, within the scope of Section 2(11) of the NLRA and of Section 2(13) of the NLRA, respectively, the supervisors and agents of Greenbrier VMC are or have been Paul Hanna: Human Resources Director; Tammy Lilly: Intensive Care Unit Director; and Autumn Hayes: Nursing Supervisor (5:16-cv-06307, Doc. No. 1). In addition, Jan Ellis held the position of Director, Employee Relations or Human Resources Representative, and has served as an agent of Respondent Greenbrier under Section 2(13) of the NLRA. (5:16-

cv-06307, Doc. No. 1).  Finally, an unnamed attorney has been
the chief negotiator (with respect to collective bargaining) on
Greenbrier's behalf; this attorney also has served as
Greenbrier's agent of Respondent within the scope of the same
statutory provision, Section 2(13) of the NLRA.  On August 30,
2012, a representation election among the Greenbrier VMC Unit
was held pursuant to a consent election agreement.  On September
25, 2012, the NLRB certified the Union as the exclusive
collective-bargaining representative of the Greenbrier VMC Unit.

On May 6, 2016, the United States Court of Appeals for the
Fourth Circuit, in <u>NLRB v. Bluefield Regional Medical Center</u>,
821 F.3d 534, 547 (4th Cir. 2016), held that Respondent
Greenbrier VMC's challenge to the Board's September 2012
certification of the Union was unmeritorious.  The Fourth
Circuit enforced a Board Order requiring Greenbrier VMC to
bargain with the Union.  821 F.3d at 540.

Since around September 25, 2012, the Union and Respondent
Greenbrier have not reached an initial collective bargaining
agreement, and have also failed to agree to an interim grievance
procedure.  (5:16-cv-06307, Doc. No. 1).  On or about August 6,
2015, Greenbrier issued two written warnings to its employee
Julie Hoffman Jackson and discharged Jackson from employment.
<u>Id</u>.  On August 19, 2015 or thereabouts, the Union requested that

Greenbrier bargain collectively about its decision to discipline and discharge Jackson.  <u>Id</u>.

Since around September 2, 2015, Petitioner alleges that Greenbrier has refused to bargain collectively with the Union with respect to Jackson's discharge.  At various times from about February 27, 2015 through November 13, 2015, Greenbrier and the Union met for the purpose of negotiating an initial collective-bargaining agreement with respect to the Unit's wages, hours, and other terms and conditions of employment. During this time, Petitioner alleges that Greenbrier VMC "bargained with no intention of reaching an agreement, insisted upon proposals that were predictably unacceptable to the Union, made proposals aimed at depriving the Union of its representational role, displayed a repeated unwillingness to adjust differences with the Union, insisted to impasse on a non-mandatory subject of bargaining over discretionary discipline related to indemnification, conditioned bargaining and furnishing requested information on the Union's execution of an indemnification agreement, and failed to furnish the Union with requested relevant and necessary information."  (5:16-cv-06307, Doc. No. 1).  Petitioner, therefore, contends that Greenbrier VMC "has failed and refused to bargain in good faith with the Union as the exclusive collective-bargaining representative of the Unit."  <u>Id</u>.

Petitioner seeks a preliminary injunction against
Greenbrier since, in Petitioner's view, absent the immediate
availability of injunctive relief, "it may fairly be anticipated
that Respondent Greenbrier will continue its unlawful conduct
during the proceedings before the Board, with the result that
Respondent Greenbrier's employees will continue to be deprived
of their fundamental right to be represented for the purposes of
collective bargaining as provided for in the Act, creating a
disruptive effect on commerce, all to the detriment of the Act
and public interest." (5:16-cv-06307, Doc. No. 1).

Petitioner moved for a preliminary injunction before this
court on July 13, 2016. (5:16-cv-06307, Doc. No. 1).

## II.  DISCUSSION

### A. PROPER LEGAL STANDARD AND FRAMEWORK

"A preliminary injunction is an extraordinary remedy, to be
granted only if the moving party clearly establishes entitlement
to the relief sought."  Manning v. Hunt, 119 F.3d 254, 263 (4th
Cir. 1997) (internal quotation marks and alteration omitted).
Entitlement to relief is determined by considering four factors:
(1) that the plaintiff "is likely to succeed on the merits," (2)
that the plaintiff "is likely to suffer irreparable harm in the
absence of preliminary relief, [(3)] that the balance of
equities tips in [the plaintiff's] favor, and [(4)] that an

10

injunction is in the public interest." Winter, 555 U.S. at 20. The movant must meet each of these factors in order to obtain a preliminary injunction.  However, satisfying these factors will not automatically guarantee an injunction.

An injunction "is not granted as a matter of course," Salazar v. Buono, 559 U.S. 700, 714 (2010).  This "extraordinary remedy" is "never awarded as of right."  Winter, 555 U.S. at 24. In particular, "'[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'"  Id. (quoting Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)).  Importantly, "whether to grant the injunction still remains in the 'equitable discretion' of the [district] court" even when a petitioner has made the requisite showing.  Christopher Phelps & Assocs., LLC v. Galloway, 492 F.3d 532, 543 (4th Cir. 2007) (construing eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006)).  The United States Supreme Court has instructed us that "'[the] grant of jurisdiction to ensure compliance with a statute hardly suggests an absolute duty to do so under any and all circumstances, and a federal judge sitting as chancellor is not mechanically obligated to grant an injunction for every violation of law.'" Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 542 (1987) (citing Weinberger, 456 U.S. at 313).  Therefore, Winter's four-

part test states only the indispensable elements that a movant must meet; satisfying these <u>sine qua non</u> factors is necessary but not always sufficient for a movant to obtain a preliminary injunction.

This preliminary-injunction analysis assumes, as it must, the starting principle that § 10(j) "is a limited exception to the federal policy against labor injunctions" and "is reserved for 'serious and extraordinary' cases when 'the remedial purpose of the Act would be frustrated unless immediate action is taken.'" <u>Sharp v. Parents in Cmty. Action, Inc.</u>, 172 F.3d 1034, 1037 (8th Cir. 1999) (<u>quoting</u> <u>Minn. Mining & Mfg. Co.</u> v. <u>Meter</u> (3M), 385 F.2d 265, 270 (8th Cir. 1967)).  Consequently, a district court's "inquiry should focus <u>initially</u> on the question of irreparable injury." <u>Sharp</u>, 172 F.3d at 1039 (emphasis added); <u>see also</u> <u>McKinney ex rel. N.L.R.B. v. Southern Bakeries,</u> <u>LLC</u>, 786 F.3d 1119, 1123 (8th Cir. 2015).  The Acting Regional Director must demonstrate to "th[is] court that the case presents one of those rare situations in which the delay inherent in completing the adjudicatory process will frustrate the Board's ability to remedy the alleged unfair labor practices." 172 F.3d at 1039.  The court must assess the likelihood of success on the merits, public interest, and whether the balance of equities tips in the petitioner's favor— but "only if the Acting Regional Director clears the 'relatively

high hurdle' of establishing irreparable harm." <u>McKinney</u>, 786
F.3d at 1123 (<u>quoting</u> <u>Sharp</u>, 172 F.3d at 1039).

The D.C. Circuit has articulated, in the main, the proper
standard for demonstrating irreparable harm:

> First, the injury must be [likely] and
> great; it must be actual and not
> theoretical. Injunctive relief will not be
> granted against something merely feared as
> liable to occur at some indefinite time. It
> is also well settled that economic loss does
> not, in and of itself, constitute
> irreparable harm. . . . Implicit in each of
> these principles is the further requirement
> that the movant substantiate the claim that
> irreparable injury is 'likely' to occur.
> Bare allegations of what is likely to occur
> are of no value since the court must decide
> whether the harm will in fact occur. The
> movant must provide proof that the harm has
> occurred in the past and is likely to occur
> again, or proof indicating that the harm is
> certain to occur in the near future.

<u>Wis. Gas Co. v. FERC</u>, 758 F.2d 669, 674 (D.C. Cir. 1985)
(internal citations omitted).  This is a persuasive exposition
of the irreparable-harm prong.  Indeed, consistent with this
restatement, the United States Supreme Court in <u>Winter</u> required
not only that the injury be far more than speculative, but also
that it be real and actual.  555 U.S. at 22.  In addition, a
district court may not grant a preliminary injunction "unless
the Director has shown that irreparable harm is 'likely'; the
'possibility' of harm is insufficient to meet the Director's

burden." <u>Small v. Avanti Health Systems, LLC</u>, 661 F.3d 1180, 1191 (9th Cir. 2011).

## B. ANALYSIS

### 1. <u>The NLRB Has Not Demonstrated the Existence of Factors Such as Declining Employee Support for the Union</u>

In an important respect, <u>Muffley ex rel. N.L.R.B. v. Spartan Mining Co.</u>, 570 F.3d 534 (4th Cir. 2009), which is a pre-<u>Winter</u> opinion of the Fourth Circuit, stated the now-obsolete benchmark for irreparable harm: the proper standard is the <u>likelihood</u> of irreparable harm, not the <u>mere possibility</u> thereof. <u>Id</u>. at 543—44. The <u>Muffley</u> Court held that "<u>potentially</u> irreparable . . . harm" suffices for the purpose of obtaining a preliminary injunction. <u>Id</u>. at 544 (emphasis added). But the United States Supreme Court in <u>Winter</u> changed all this since, in the <u>Winter</u> Court's own words, "the . . . 'possibility' standard is too lenient." <u>Winter</u>, 555 U.S. at 22. <u>Muffley</u> found an irreparable harm to exist since "even a well-established union . . . might well lose support over time, such that when the [NLRB] does issue its order, it might be impossible for the union to reconstitute." <u>Id</u>. <u>Muffley</u> is also a case upon which the Acting Regional Director substantially relies now, both at oral argument and in her filings. (1:16-cv-06305, Doc. Nos. 4, 13, 14).

Not only does the analysis in Muffley suffer from a flawed standard and has accordingly been superseded by Winter, its facts are also distinguishable from the cases at hand. Before this court, the NLRB has asserted that "employee support is likely to wane due to a lack of understanding as to why bargaining is taking so long" insofar as the defendants are concerned (1:16-cv-06305, Doc. No. 4; see also 5:16-cv-06307, Doc. No. 5 ("Employee support is likely to continue to wane due to a lack of understanding as to why bargaining is taking so long.")).  The NLRB has not demonstrated that "employee support [for the Union] is likely to wane" and, at any rate, the causation between decreasing employee support and a slow bargaining process under the circumstances present here is purely speculative.  In addition, several registered nurses (RNs) have shown consistent commitment to the Union as members of its bargaining committee.  See Affidavits of Mahon (pp. 2, 4); Meadwell 1 (pp. 1, 5); and Galuszek (pp. 1, 4), 1:16-cv-06305, Doc. No. 4.  Moreover, various RNs have asserted their spirited support of the Union, which they have demonstrated by engaging in handbilling, speaking at conferences, meeting attendance, delivery of letters to Hospital administrators, and conversations with fellow RNs.  See Affidavits of Meadwell 1 (pp. 3, 7, 12); and Galuszek (pp. 4, 5, 7), 1:16-cv-06305, Doc. No. 4.  Finally, the assertive posture that the Union has taken

15

to represent the RNs (throughout 2015), particularly by filing numerous unfair labor practice charges on the nurses' behalf, indicates that the employees probably will not perceive the Union as weak and will not vote with their feet by leaving it. See, e.g., Osthus v. TruStone Financial Federal Credit Union, 2016 WL 1643770, at *12 (D. Minn. 2016) (employee awareness of union efforts to "undo" the employer's "allegedly offending acts and fight for those employees" usually generates inference that "the risk of the Union being perceived as weak or ineffective is reduced").  Therefore, this collated evidence adequately disputes the NLRB's claim about waning employee support.  This evidence renders it less than "likely" that an injury is occurring, let alone that such an injury will be irreparable. Winter, 555 U.S. at 20.

The NLRB has not furnished any convincing evidence to substantiate its position regarding the Union's loss of employee support.  In the Bluefield Hospital case, RN Meadwell stated that no RN has complained to her about the paucity of bargaining sessions.  See Affidavit of Meadwell 2 (p. 12), 1:16-cv-06305, Doc. No. 4.  Moreover, the court cannot detect any dearth of employee support from the Mahon affidavit.  Moreover, the press interview that is discussed in the Galuszek affidavit took place more than two years prior to the alleged unfair labor practices; the media wanted to interview the RNs picketing Bluefield, which

16

Bluefield Hospital allegedly did not allow on hospital property. See Affidavits of Meadwell 1 (p. 9); Galuszek (p. 4), 1:16-cv-06305, Doc. No. 4.

In the Greenbrier VMC case, several affidavits show that bargaining unit members frequently "contact the Union with questions and for representation by the Union." (5:16-cv-06307, Doc. No. 14); see Affidavits of Mahon 1 (p. 1); Mahon 2 (p. 15); Jackson (pp. 18—19), 5:16-cv-06307, Doc. No. 5. At Greenbrier, Union representative Michelle Mahon's affidavits say nothing about diminishing Union support. See Affidavits 1 and 2 of Mahon, 5:16-cv-06307, Doc. No. 5. In addition, both Mahon and RN Michelle O'Bryan asserted that they habitually explain to the RNs how the Union is advocating on their behalf and representing them vigorously. See Affidavits of Mahon 2 (p. 10); O'Bryan (pp. 1, 2, 5), 5:16-cv-06307, Doc. No. 5. Lastly, O'Bryan pointed out that the RNs were informed that the Union has raised Charges and legal challenges in its effort to represent the RNs. See Affidavit of O'Bryan (p. 5), 5:16-cv-06307, Doc. No. 5. Thus, the court may not draw the inference that the Union's strength has decreased, let alone speculate as to the *cause* of such (non-existent) decrease, since the time of the Union's certification. Had the court found objective evidence indicating a decrease in employee support for the Union, then the court would assiduously have endeavored to ascertain the cause of such decrease.

Besides, for reasons of its own, the NLRB delayed initiating the proceedings.  The allegations contained in the NLRB's Complaint arise from sessions that occurred from late February 2015 through November 2015.  The Union filed its Charge concerning the alleged unfair labor practices on January 20, 2016.  Consequently, while the NLRB ostensibly was in a position to issue a Complaint long before March 10, 2016 (when the Complaint actually was issued), the General Counsel did not prosecute this case.  Rather, the Board combined the case into a more complex matter, one that would progress unhurriedly.  Consequently, if delay it be, then such delay is caused by the NLRB's own strategic considerations.  The NLRB, contrary to its own assertion, is not trying "to avoid delay," but instead has been a principal catalyst in promoting it. (1:16-cv-06305, Doc. No. 4; 5:16-cv-06307, Doc. No. 5).

## 2. The NLRB's Remedies Will Be Adequate

Irreparable harm exists only when the remedy will become unavailable unless a preliminary injunction is granted and the district court's judgment, even if it is favorable, will remain unsatisfied.  By contrast, when the remedy can be satisfied at the conclusion of the Board proceedings, an injury is not deemed to be "irreparable."

In Hughes Network Systems, Inc. *v.* InterDigital Communications Corp., 17 F.3d 691, 693—94 (4th Cir. 1994), the

Fourth Circuit observed that a preliminary injunction is not normally available where the harm at issue can be remedied by money damages.  At the same time, this court is heedful that "[e]ven if a loss can be compensated by money [or other] damages . . ., extraordinary circumstances may give rise to the irreparable harm required for a preliminary injunction."  Id. at 694.  But such "extraordinary circumstances" are designed to be rarely invocable exceptions.  Id.  The Fourth Circuit explained that such circumstances may exist where, for example, "the moving party's business cannot survive absent a preliminary injunction or where damages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected."  Id. (internal quotations marks and alterations omitted).  None of these drastic consequences is expected to befall the Union.

Moreover, "[i]n the narrow circumstances in which preliminary injunctions are warranted despite the adequacy of money damages, injunctions are 'carefully tailored, generally operating simply to preserve the plaintiff's opportunity to receive an award of money [or other] damages at judgment.'" Bethesda Softworks, L.L.C. v. Interplay Entertainment Corp., 452 F. App'x 351, 353—54 (4th Cir. 2011) (citing Hughes Network, 17 F.3d at 693—94).  The Fourth Circuit distilled the general principle that applies to this case: "The traditional office of

a preliminary injunction is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the [adjudicator's] ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litig., 333 F.3d 517, 525 (4th Cir. 2003). Hughes envisions, for instance, that insolvency may alter the status quo and undercut the decision-maker's final ability to have its judgment satisfied. See Hughes, 17 F.3d at 694. The decision-maker here is the NLRB and eventually, on a more limited and deferential basis when the statute is silent or ambiguous, the Circuit Court of Appeals where an appeal is lodged. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984) (second step of Chevron analysis inquiring whether the agency interpretation is a "permissible construction of the statute"). As a result, the irreparable-harm prong might be satisfied when the preliminary injunction actually is necessary "to preserve the plaintiff's opportunity to receive an award of money [or other] damages at the judgment." Hughes, 17 F.3d at 694. With respect to the Petitions at hand, then, the injunctive relief that the NLRB seeks would have to preserve the Respondents' status or assets such that the NLRB "could satisfy a judgment in the event [the NLRB] prevails on the merits." Bethesda Softworks, 452 F. App'x at 353–54.

20

The NLRB has not demonstrated in either case that availing itself of this court's interim-injunctive-relief authority will be any more effective than utilizing its own expansive remedial powers.  Along with other authorities, the United States Supreme Court frequently has affirmed this expansive NLRB authority to identify and then rectify the unfair labor practices in which an employer allegedly has engaged.  See Franks v. Bowman Transp. Co., Inc., 424 U.S. 747, 769 (1976) (recognizing NLRB authority "'to take measures designed to recreate the conditions and relationships that would have been had there been no unfair labor practice.'") (citing Carpenters v. NLRB, 365 U.S. 651, 657 (1961) (Harlan, J., concurring)); Fibreboard Paper Prods. Corp. v. NLRB, 379 U.S. 203, 216 (1964) ("The Board's power [to order remedies] is a broad discretionary one, subject to limited judicial review."); McKinney ex rel. N.L.R.B. v. Southern Bakeries, LLC, 786 F.3d 1119, 1125 (8th Cir. 2015) (noting the NLRB's broad remedial powers to remedy employer violations in the shape of unfair labor practices); Medallion Kitchens, Inc. v. NLRB, 811 F.2d 456, 460 (8th Cir. 1987) (observing that the NLRA affords "the Board broad latitude in fashioning remedies for unfair labor practices").  To illustrate further, should an employer commit misconduct while she is at the bargaining table, so to speak, the NLRB may mandate the employer to reimburse the corresponding labor organization for bargaining expenses.  See

HTH Corp., 361 NLRB No. 65 (2014) (recognizing NLRB's power to order reinstatement, front pay, back pay, wide-ranging cease-and-desist orders, furnishing the Union with relevant information, and notice-reading requirement, among other remedies).

With respect to labor schedules and other routine incidents of employment, such equitable benefits may be recouped later through pecuniary or equitable relief, should the NLRB prevail in the Board proceedings.  At any rate, the court will not "find irreparable harm whenever employees could be without the nonmonetary benefits of collective bargaining while awaiting the Board's action."  McKinney, 786 F.3d at 1125.  Indeed, if the "temporary absence of a union representative," even when adjusting for the facts that "the Union lacks majority support and the Company has not acted to oust and replace union members or reduce employee benefits," does not produce a finding of irreparable harm, as was the case in McKinney, then the facts present here do not do so either.  Id.  This is so because the delays in bargaining, limited number of bargaining sessions, and allegedly scanty results that the bargaining sessions have engendered do not raise any such extraordinary circumstances.

The cases in which preliminary injunctions have been issued contain unique factors, which are absent here.  See, e.g., Lineback ex rel. NLRB v. Irving Ready-Mix Inc., 653 F.3d 566,

568 (7th Cir. 2011) (employer ejected the union while a strike
was in progress, decreased employee benefits, and directly
negotiated with non-union employees); Frankl v. HTH Corp., 650
F.3d 1334, 1363 (9th Cir. 2011) (when employer refuses, in bad
faith, to negotiate and also unilaterally withdraws union
recognition, without objective evidence of decreased union
support, this conduct may "demonstrate the likelihood of
irreparable injury, absent some unusual circumstance indicating
that union support is not being affected or that bargaining
could resume without detriment as easily later as now");
Bloedorn v. Francisco Foods, Inc., 276 F.3d 270, 298—99 (7th
Cir. 2001) (without an injunction, the NLRB's reinstatement of
discriminated-against former employees would be unrealistic as
the employees may be unavailable; the defendant's employees were
"working without the advocacy of their chosen representative");
Asseo v. Pan Am. Grain Co., 805 F.2d 23, 26—27 (1st Cir. 1986)
(irreparable harm exists when "the employer continue[s] its
threats of discharge or plant closings even during the hearings
before the ALJ on the previous unfair labor practices").  On top
of this, the pre-Winter cases are largely inapplicable since
Winter altered the irreparable-harm standard to "likely" from
"possible."

　　Moreover, the factors that might effectively have
stultified bargaining — e.g., the defendants' revocation of

Union recognition as the nurses' collective-bargaining
representative, a rival labor organization's paramountcy over
this Union as the voice of the nurses, or a serious effort to
decertify the Union — are non-existent here.  The court has been
advised in the Bluefield Hospital case, for instance, that "unit
employees may move, retire, or seek other employment while Board
proceedings are pending," a consequence of the "passage of
time." (1:16-cv-06305, Doc. No. 4).  But none of this is
"irreparable."  Nor do these garden-variety considerations
justify a remedy that is extraordinary since these kinds of
changes exist in all manner of contentious cases, including the
vast majority of cases and petitions which do not warrant
preliminary injunctions.

In a way, the court concludes where its analysis began: §
10(j) "is a limited exception to the federal policy against
labor injunctions" and "is reserved for serious and
extraordinary cases . . . ." Sharp, 172 F.3d at 1037 (internal
citations and quotation marks omitted).  Preliminary injunction
is a principle of equity.  "Of course, Congress may intervene
and guide or control the exercise of the courts' discretion, but
we do not lightly assume that Congress has intended to depart
from established principles. . .." Amoco Prod. Co., 480 U.S. at
542 (citing Weinberger, 456 U.S. at 313).  In fact, "[u]nless a
statute in so many words, or by a necessary and inescapable

24

inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." Amoco Prod. Co., 480 U.S. at 542 (internal citation and quotation marks omitted).  If Congress believed that the circumstances here warranted a finding of irreparable harm or, better yet, a less stringent standard to obtain a preliminary injunction, then Congress might have so stipulated.  Congress has not done so; instead, Congress has subjected the facts present in this case to the same rules applicable elsewhere in the law governing preliminary injunctions.[2]

Especially since the category of equitable benefits is discrete and identifiable, it is all the more deducible that the NLRA's (or any other statutory) text does not authorize the federal courts to enter a preliminary injunction on the remote

---

[2] "Men may intend what they will; but it is only the laws that they enact which bind us."  Antonin Scalia, "Common-Law Courts in a Civil-Law System: The Role of United States Federal Courts in Interpreting the Constitution and Laws," in A MATTER OF INTERPRETATION: FEDERAL COURTS AND THE LAW 17 (Amy Gutmann ed., 1997); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 29 (2012) ("In the interpretation of legislation, we aspire to be 'a nation of laws, not of men.' This means (1) giving effect to the text that lawmakers have adopted and that the people are entitled to rely on, and (2) giving no effect to lawmakers' unenacted desires."); id. at 30 ("Subjective intent is beside the point.").  Here, both Congress' words and its intent indicate the strictures pertaining to preliminary injunctions.  Once a movant cannot satisfy that a harm is actually likely to be not just general, but actually irreparable, then her petition for a preliminary injunction must be denied.

possibility that some equitable benefits of the employees might otherwise be lost.  Nor, of course, do the principles of equity. Courts must presuppose that Congress was aware of this discrete and identifiable class of labor benefits, just as Congress is aware of the legal framework into which it will be embedded. See Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of existing law when it passes legislation").  Still, Congress chose not to carve out a novel jurisprudence of injunctions especially for this purpose (or class of purposes).  The federal courts, in the modest discharge of their limited role in our constitutional scheme, must respect this choice that the principles of equity as well as the First Branch have made.

We have no creative license to infer a contrary outcome here since "Congress . . . does not alter the fundamental details of a [statutory] scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."  Whitman v. American Trucking Associations, 531 U.S. 457, 468 (2001).  Such a "textual commitment" and election made by the equitable principles, which Congress has chosen to leave undisturbed, "must be a clear one" in order for the federal courts to accord it any effect.  Id.  Here this court can divine no such thing.

In sum, then, the court does not see any legitimate grounds for finding irreparable injury here.  Consequently, the court need not examine the other preliminary-injunction requirements that Winter recognizes.  See Sharp, 172 F.3d at 1039.  The preliminary injunctions that Petitioner seeks are unwarranted.[3]

### III. CONCLUSION

For the foregoing reasons, the court **DENIES** the Petitions for Preliminary Injunction without prejudice.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to plaintiff and to all counsel of record.

**IT IS SO ORDERED** this 20th day of September, 2016.

ENTER:

David A. Faber
Senior United States District Judge

---

[3] Based on Petitioner's representations, the court is assured that discovery is unnecessary and will not aid the adjudicative process insofar as these Petitions are concerned.